Filed 3/17/15  P. v. Miears CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER HILTON MIEARS,<br><br>    Defendant and Appellant. | C074710<br><br>(Super. Ct. No. 11F06441) |

Defendant Christopher Hilton Miears shot his wife twice with a shotgun. Convicted of attempted premeditated murder and other crimes, he appeals.  He contends the evidence was insufficient to support a finding that the attempted murder was premeditated.  We affirm.

PROCEDURE

A jury found defendant guilty of premeditated attempted murder (Pen. Code, §§ 187, subd. (a); 664, subd. (a)), spousal abuse (Pen. Code, § 273.5, subd. (a)), and elder

1

abuse (Pen. Code, § 368, subd. (b)(1)), and the jury found true allegations that he personally inflicted great bodily injury in a domestic violence case (Pen. Code, § 12022.7, subd. (e)), personally used a firearm (Pen. Code, §§ 1203.06, subd. (a)(1); 12022.5, subd. (a)(1)), and personally discharged a firearm causing great bodily injury (Pen. Code, § 12022.53, subd. (d)).

The trial court sentenced defendant to a total indeterminate term of 32 years to life in state prison. It imposed seven years to life for attempted premeditated murder, plus 25 years to life for personally discharging a firearm causing great bodily injury, and it imposed and stayed terms for the remaining counts and enhancements.

FACTS

Defendant was married to Judith Posehn, who was 71 years old when defendant committed his crimes. The marriage was not good because defendant was, in Posehn's words, "drunk all the time and doing drugs and staying out all night." On September 18, 2011, defendant left the house in the morning and did not communicate with Posehn until around 8:00 p.m., when he called to say that he was coming home. She could tell he had been drinking.

When defendant got home, Posehn was already in bed. Defendant drove into the driveway, hitting the garage door. He then kicked or banged on the security screen door, so Posehn's daughter-in-law, Angel, would let him in. The noise woke up Posehn. Angel went to the kitchen, and defendant also walked into the kitchen and sat down at the table. He talked about the different kinds of alcohol he had drunk that night. Angel described defendant's demeanor as "goofy" and "joking around."

Posehn came out of her bedroom and sat down in a chair in the living room. Defendant approached her and punched her in the side of the head with his fist. Defendant said, "This is what you forced me to do." Angel tried to use the telephone to call 911, but defendant struggled with her over the phone. Posehn tried to get back to her

2

bedroom, but defendant kicked her twice, knocking her down each time. Posehn went outside to the front porch.

Defendant said, "I'm getting the shotgun." He followed Posehn to the front porch with a shotgun. From about 12 feet away, defendant shot Posehn, hitting her in the chest, then went back into the house and reloaded the shotgun. He went back out to the front porch and said, "Aren't you dead yet, bitch?" And he shot her in the face.

By then police had arrived, and Posehn crawled away to safety.

Defendant testified in his own defense. He claimed that Posehn was constantly mean to him. She was mad at him the morning of the shooting, so he left to go with a friend to sell scrap metal. In the afternoon, defendant went to a liquor store and bought beer and hard liquor. He ate very little that day, and he drank some of the alcohol he bought at the liquor store. Posehn called him around 5:00 p.m., and she told him not to bother coming home if he had been drinking. After the phone call, defendant went to the home of a friend named Cliff and drank there.

At about 7:00 p.m., defendant went to the home of a friend named Charles and drank there. A man named Scott was also there. When defendant was leaving Charles's home, Scott told defendant that defendant owed him $20 for the GHB (a sedative) someone had put in defendant's drink. Feeling intoxicated, defendant drove home around 8:45 p.m.

After defendant went inside, Posehn yelled at him to leave, so defendant hit her in the jaw and pushed her into a chair. He retrieved his shotgun from his bedroom and shot twice into the ceiling. The shotgun was empty, so he went into his bedroom to get more shells and reload the shotgun. When he finished, he went to the front room and shot Posehn in the stomach.

Defendant testified that, initially, he did not remember anything after he retrieved the shotgun, but memories returned over time. He remembered that, after he shot Posehn the first time, he turned the shotgun toward his head, and Posehn begged him not to shoot

3

himself.  He said he did not remember shooting Posehn in the chest and face, but that the shotgun went off when Posehn grabbed it.

A pharmacologist called by the defense testified that alcohol and GHB produce similar sedative effects and that using them together produces significant sedation.

In rebuttal, the prosecution presented evidence that defendant did not tell anyone that he had been drugged or that a man named Scott was involved.

DISCUSSION

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one.  ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]" ' [Citations.]"  (*People v. Smith* (2005) 37 Cal.4th 733, 738-739.)  It is incumbent upon the reviewing court to accept any logical inferences the jury might have drawn from the evidence.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

First degree murder decisions have been used to analyze premeditated attempted murder.  (See *People v. Lenart* (2004) 32 Cal.4th 1107, 1127.)

A person is deemed to have committed the crime of first degree murder when the killing is "willful, deliberate, and premeditated."  "To prove the killing was 'deliberate and premeditated,' it shall not be necessary to prove the defendant maturely and meaningfully reflected upon the gravity of his or her act."  (Pen. Code, § 189.) " ' "Deliberation" refers to [a] careful weighing of considerations in forming a course of action; "premeditation" means thought over in advance.  [Citations.]  "The process of premeditation and deliberation does not require any extended period of time.  'The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may

4

follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.' [Citations.]" ' [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1182.)

Evidence of premeditation is often presented circumstantially. Appellate courts have observed three categories, or features, of evidence are often present in cases where premeditation has been found: planning, motive, and manner of killing. A combination of these features is sufficient to support a finding of premeditation. (*People v. Anderson* (1968) 70 Cal.2d 15, 26-27; see also *People v. Halvorsen* (2007) 42 Cal.4th 379, 420 ["Since *Anderson*, we have emphasized that its guidelines are descriptive and neither normative nor exhaustive, and that reviewing courts need not accord them any particular weight."].)

The evidence here amply shows planning and motive, and the manner of the crime also supports a finding of premeditation and deliberation.

After defendant returned to the home, he retrieved a shotgun, and shot Posehn in the chest. That alone was evidence of planning, but then he reloaded and shot her in the face. There was plenty of time to premeditate and deliberate.

There was evidence that Posehn had been verbally abusive to defendant. While he may not have acted violently toward her in the past, her verbal abuse provided a motive for his attempt to kill her. He, himself, said that she had forced him to do it. In addition to all the prior episodes in which he felt she had been mean to him, she had told him that day not to come home if he had been drinking.

And the manner of the crime indicated that he was determined to kill her, shooting her in the chest and the face.

Defendant attempts to minimize this evidence by giving more innocent explanations for the features of premeditation and deliberation. For example, he argues that the shotgun was already present in the house, his intoxication makes it less likely that he planned to kill Judith, he had always been able to manage his "awful" relationship with Judith nonviolently, and the manner in which he shot Judith does not necessarily

5

show a preconceived plan.  None of these arguments casts doubt on the sufficiency of the evidence relied on by the jury to find premeditation and deliberation.  Much of the evidence, such as the testimony concerning the effect of intoxication, was subject to the jury's credibility and reliability determinations and its application to the facts of this case.  Together, the evidence of planning, motive, and manner of attempting to kill were sufficient to support a conviction for premeditated attempted murder.  In the end, the jury did not see the evidence in the less culpable light in which defendant now would have us view it.

## DISPOSITION

The judgment is affirmed.


     NICHOLSON    , J.


We concur:


     BLEASE     , Acting P. J.


     HOCH     , J.